UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| AUDREY MACHNIK, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br>vs.<br><br>DCM SERVICES, LLC,<br><br>        Defendant. | Case No.: 17-cv-1409<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

# INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, chs. 421-427, Wis. Stats. (the "WCA"), and state common law.

# JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337 and 1367. Venue in this District is proper in that Defendants directed their collection efforts into the District.

# PARTIES

3. Plaintiff Audrey Machnik ("Machnik") is an individual who resides in the Eastern District of Wisconsin (Milwaukee County). She is the widow of Michael Machnik, an individual who resided in the Eastern District of Wisconsin (Milwaukee County) until his death on August 19, 2017.

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her debts allegedly incurred for personal, family or household purposes.

5. Plaintiff is also a "customer" as defined in the Wisconsin Consumer Act, § 421.301(17), Wis. Stats., in that she engaged in a consumer transaction.

6. Defendant DCM Services, LLC ("Defendant") is a foreign Limited Liability Company with its principal offices located at 7601 Penn Ave So., Suite A600, Richfield, Minnesota 55423 and with Wisconsin registered agent Corporation Service Company, 8040 Excelsior Drive, Suite 400, Madison, Wisconsin 53717.

7. Defendant is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Defendant is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. Defendant is a debt collector as defined in 15 U.S.C. § 1692a and § 427.103(3), Wis. Stats.

**FACTS**

9. Plaintiff's husband passed away on August 19, 2017.

10. Approximately three weeks later, on or about September 11, 2017, Defendant mailed three debt collection letters, addressed to "The Estate of MICHAEL J MACHNIK," to Plaintiff, attempting to collect alleged debts. Copies of these letters are attached to this Complaint, collectively, as Exhibit A.

11. Also on or about September 11, 2017, Defendant mailed two debt collection letters, addressed to "Audrey Machnik" to Plaintiff, attempting to collect alleged debts that were allegedly owed to "LAKESHORE MEDICAL CLINIC LTD.," "AURORA MEDICAL GROUP INC.," and "AURORA HEALTH CARE METRO INC." (collectively, "Aurora"). Copies of these letters are attached to this Complaint, collectively, as Exhibit B.

12. On or about September 12, 2017, Defendant mailed an additional debt collection letter, addressed to "Audrey Machnik" to Plaintiff, attempting to collect an alleged debt that was

2

allegedly owed to "AURORA HEALTH CARE METRO INC." (also, "Aurora"). A copy of this letter is attached to this Complaint as Exhibit C.

13. Upon information and belief, the letters in Exhibits A, B, and C are form letters, generated by computer, and with the information specific to the recipient inserted by computer.

14. Upon information and belief, the letters in Exhibits A, B, and C are form debt collection letters, generated by computer, and with the information specific to the recipient inserted by computer.

15. Upon information and belief, Exhibits A, B, and C were the first letters Plaintiff was sent by DCM Services regarding these alleged debts.

16. Exhibits B and C contain the following:

> You have the right to dispute the validity of this debt or any portion of it (including any portion of any listed account). We will assume this debt to be valid unless you do so within 30 days after receipt of this letter. If you do so in writing within that time frame, we will obtain verification and mail it to you. If you send a written request within the same time frame, we will provide you with the name and address of the original creditor(s), if different from the current creditor(s).

17. The alleged debts that Defendant was collecting were incurred for medical services provided to Plaintiff's husband, Michael Machnik.

18. With respect to the medical debt listed in Exhibits A, B, and C, Plaintiff's husband was not required to pay for the medical services at the time services were rendered. Instead, Aurora mailed a bill several days or weeks after the dates of service. Thus, payment was deferred by agreement. *See Tylke v. Advanced Pain Mgmt., S.C.*, Case No. 14-cv-5354 (Milwaukee Co. Cir. Ct., Dec. 11, 2014) ("Any time a merchant sends a bill for goods or services after a consumer transaction has taken place, there is an 'agreement to defer payment.'"). Copies of such bills are attached to this Complaint as Exhibits D-F.

19. Exhibits B and C contain the following:

3

**FOR WISCONSIN RESIDENTS**
This Collection Agency is licensed by the Division of Banking, in the Wisconsin Department of Financial Institutions, www.wdfi.org.

20. <u>Exhibits B and C</u> also contain the following:

> We are contacting you about the debt for services provided to your spouse because it is our understanding that you may have liability for these medical expenses.

21. <u>Exhibits B and C</u> falsely represent that Plaintiff is responsible for the alleged debts referenced in <u>Exhibits B and C</u>, when the liability of Plaintiff had not been established as of the dates of <u>Exhibits B and C</u>.

22. Wisconsin's common law doctrine of necessaries imposes on a spouse a personal liability to creditors who provided necessaries for the support of the family. *St. Marys Hosp. Med. Ctr. v. Brody*, 186 Wis. 2d 100, 108 (Ct. App. 1994). Additionally, Wis. Stat. § 765.001(2), part of Wisconsin's marital property law, has modified Wisconsin's doctrine of necessaries, so that it now imposes personal liability on each spouse for the other's necessaries. *Id.* at 109. Wis. Stat. § 766.55 addresses spouses' obligations, and the Wisconsin courts have held that a spouse's obligation for the other spouse's necessary medical treatment, according to one's ability, falls into the support category, Wis. Stat. § 766.55(2)(a), as an "obligation to satisfy a duty of support owed to the other spouse." *St. Mary's Hosp.*, 186 Wis. 2d at 109-10.

23. "The significance of the holding in *St. Marys Hospital*, 186 Wis. 2d 100, 519 N.W.2d 706 (Ct. App. 1994), is that the healthcare provider may then satisfy a judgment against the spouse who did not receive medical care from all marital property and all other property of the obligated spouse." *Mercy Health Sys. Corp. v. Gauss*, No. 01-2421, 2001 Wisc. App. LEXIS 1309, at *9 n.4 (Ct. App. Dec. 20, 2001).

24. The alleged debt listed in <u>Exhibits B-F</u> had not been reduced to judgment as of the date of <u>Exhibits B and C</u>.

25. The creditor listed in Exhibits B and C, Aurora, had not sued Plaintiff to establish Plaintiff's liability on the alleged debt listed in Exhibits B-F as of the date of Exhibits B and C.

26. Defendant had not sued Plaintiff to establish Plaintiff's liability on the alleged debt listed in Exhibits B-F as of the date of Exhibits B and C.

27. The unsophisticated consumer would assume Defendant, a "Collection Agency [that] is licensed by the Division of Banking, in the Wisconsin Department of Financial Institutions," would be familiar with the law governing collection of medical debts.

28. The unsophisticated consumer, still reeling from grief after the loss of a loved one and preparing to move forward in life without that loved one, would not be able to research complex issues like liability for medical debts incurred as a result of a spouse's treatment.

29. Upon information and belief, it is Defendant's pattern and practice to send letters similar to those in Exhibits A, B, and C to the spouse and immediate family members of recently deceased persons, attempting to capitalize on the death in the family to collect debts that the spouse and immediate family members may not be obligated to pay.

30. The sole purpose of sending Exhibits A-C to Plaintiff is to unduly harass Plaintiff into paying the alleged debt, potentially before paying other debts. *See* 15 U.S.C. § 1692(e) (it is part of the purpose of the FDCPA "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged").

31. The unsophisticated consumer, stricken with grief and overwhelmed with communications from debt collectors, would be pressured into paying a debt for which his or her liability had not been established, potentially out of personal assets that he or she would never be legally required to draw on to satisfy a duty of support owed to the other spouse, and even if the creditor has no intention of ever suing to collect the debt.

32. <u>Exhibits B and C</u> also contain the following, "KEY" which identifies specific features of the alleged debts Defendant was attempting to collect:

```
KEY:
Line 1 - Reference No.
Line 2 - Creditor Name
Line 3 - Creditor Name continued
Line 4 - Service Date
Line 5 - Creditor Invoice No.
Line 6 - Balance
```

33. <u>Exhibit B</u> contains the following:

Account details are as follows (See above key for line description):

▉2111
LAKESHORE MEDICAL CLINIC LTD.

02/13/2017
*****6322
$71.25

34. Based on the "KEY," it appears that one of the alleged debts Defendant was collecting with <u>Exhibit B</u>, had a "Reference No." ending in the last four digits 2111, was owed to "LAKESHORE MEDICAL CLINIC LTD.," had a "Service Date" of 02/13/2017, had a "Creditor Invoice No." ending in the last four digits 6322, and had a "Balance" of $71.25.

35. <u>Exhibit F</u> contains the following:



6

36. Based upon Exhibit F, the alleged debt, allegedly owed to Aurora with an account number ending in the last four digits 6322, and with a balance of $71.25 was incurred for various medical services performed between February 13, 2017 and February 19, 2017.

37. Upon information and belief, Defendant knew or should have known that the accounts it was trying to collect were medical accounts and that inpatient medical services may be incurred throughout several days.

38. Plaintiff's husband's estate lacks sufficient assets to satisfy any of his alleged medical debts.

39. Plaintiff is uncollectible. All of her assets and income are exempt from attachment under federal and state law.

40. Plaintiff was confused by Exhibits A-C.

41. Defendant's misrepresentations are likely to cause emotional distress to the average customer. *See* Wis. Stat. § 427.105(1) ("actual damages shall include damages caused by emotional distress or mental anguish with or without accompanying physical injury proximately caused by a violation of this chapter"); *see also Brunton v. Nuvell Credit Corp.*, 325 Wis. 2d 135, 161 n.12, 785 N.W.2d 302, 314 n.12 (2010) (in WCA actions relating to debt collection, Wisconsin courts employ the FDCPA's objective "unsophisticated consumer" standard).

42. Plaintiff had to spend time and money investigating Exhibits A-C, and the consequences of any potential responses to Exhibits A-C.

43. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibits A-C.

## THE FDCPA

44. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

45. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

46. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

47. 15 U.S.C. § 1692e(2) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt, or the "false representation of…compensation which may be lawfully received by any debt collector for the collection" of an alleged debt.

48. 15 U.S.C. § 1692e(5) specifically prohibits threatening "to take any action that cannot legally be taken or that is not intended to be taken."

49. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

50. 15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

51. 15 U.S.C. § 1692f(1) specifically prohibits: "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

52. 15 U.S.C. § 1692g states:

9

> (a) **Notice of debt; contents**
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt **or a copy of a judgment against the consumer** and a copy of such verification **or judgment** will be mailed to the consumer by the debt collector.

15 U.S.C. § 1692g (emphasis added).

53. 15 U.S.C. § 1692g(b) states, in part:

> (b) **Disputed debts**
>
> . . .
>
> Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

## THE WCA

54. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

55. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

56. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.
10

57. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

58. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

59. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

60. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

61. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly

11

adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

62. Wis. Stat. § 427.104(1)(h) specifically prohibits a debt collector from: "Engag[ing] in other conduct which can reasonably be expected to threaten or harass the customer or a person related to the customer."

63. Wis. Stat. § 427.104(1)(j) specifically prohibits a debt collector from "[c]laim[ing], or attempt[ing] or threaten[ing] to enforce a right with knowledge or reason to know that the right does not exist."

**COUNT I -- FDCPA**

64. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

65. Defendant attempted to collect a debt from Plaintiff, who is the spouse of the recipient of the medical services listed in Exhibits A-F, and whose liability had not been established as of the dates of Exhibits B and C.

66. At the time Defendant mailed Exhibits B and C, informing the non-incurring spouse that "it is our understanding that you may have liability for these medical expenses" was a false, deceptive, and/or misleading representation to the unsophisticated consumer recipient.

67. Exhibits B and C also falsely represent that Defendant has lawfully established entitlement to collect the debt from Plaintiff.

68. Exhibits B and C create a false impression as to its authorization or approval for collecting the debts listed in Exhibits B and C from Plaintiff.

69. Defendant violated 15 U.S.C. § 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f, and 1692f(1).

12

## COUNT II -- FDCPA

70. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

71. Defendant's false statement that the alleged debt it was attempting to collect was incurred for services on 2/13/2017 is a material false statement because it would confuse the unsophisticated consumer as to whether the balance of the debt covered the entire account or just the portion of the debt arising from services incurred on February 13, 2017.

72. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2), and 1692e(10).

## COUNT III – FDCPA

73. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

74. Defendant did not specify that it would obtain a copy of a judgment against Plaintiff and mail the copy of the judgment as part of the verification process.

75. Defendant's failure to provide the correct validation notice is especially misleading and confusing because the alleged debts referenced in Defendant's letters cannot be properly verified without a judgment.

76. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), 1692f, 1692g(a)(4), and 1692g(b).

## COUNT IV – WCA

77. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

78. Defendant attempted to collect alleged debts that Plaintiff had not personally incurred and for which Plaintiff's liability had not been established.

13

79. Defendant violated Wis. Stat. §§ 427.104(1)(h) and 427.104(1)(j).

80. Section 895.043(3), Wis. Stats. provides for an award of punitive damages in cases in which the defendant acts maliciously towards the plaintiff, or acts in intentional disregard of the rights of the plaintiff.

81. Hounding Plaintiff just days after her husband's death for payment on accounts that Defendants knew she was not yet liable for was malicious conduct or intentional disregard of Plaintiff's rights, entitling Plaintiff to punitive damages.

## CLASS ALLEGATIONS

82. Plaintiff brings this action on behalf of two Classes.

83. Class I ("Liability" Class") consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter by Defendant, (c) seeking to collect a debt incurred for medical services (d) which debt had not been reduced to judgment on the day that Defendant mailed the letter (e) and which letter was addressed to the spouse of the recipient of the medical services, (f) and which non-incurring spouse did not sign a contract agreeing to be billed for the medical debt (g) between October 13, 2016 and October 13, 2017, inclusive, (h) that was not returned by the postal service.

84. Class II ("Service Date Class") consists of (a) all natural persons in Wisconsin (b) who were sent a collection letter by Defendant, (c) seeking to collect a debt incurred for medical services, (d) which services were incurred as inpatient services, (e) between October 13, 2016 and October 13, 2017, (f) that was not returned by the postal service.

85. The Classes are so numerous that joinder is impracticable. On information and belief, there are more than 50 members of each Class.

14

86. There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common questions are whether <u>Exhibits B and C</u> violate the FDCPA and the WCA.

87. Plaintiff's claims are typical of the claims of the members of each Class. All are based on the same factual and legal theories.

88. Plaintiff will fairly and adequately represent the interests of the members of each Class. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

89. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## **JURY DEMAND**

90. Plaintiff hereby demands a trial by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) injunctive relief;

(d) punitive damages;

(e) attorneys' fees, litigation expenses and costs of suit; and

(f) such other or further relief as the Court deems proper.

Dated: October 13, 2017

**ADEMI & O'REILLY, LLP**

By: s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com